The plaintiff was administrator de bonis non of Clarissa M. Ritchey deceased, and the defendants were the administratrix, (173) and the sureties upon the bond, of William R. Ritchey, deceased, who was the administrator of said Clarissa.
As such administrator, the said William, in 1862 had in his hands the distributive share of one Martin A. Ritchey, who resided in Illinois. Thereupon he was served with the following process:
CONFEDERATE STATES OF AMERICA,} In the District Court for the
DISTRICT OF NORTH CAROLINA. } District of Cape Fear.
To W. N. Ritchey, Adm'r of Clarissa Ritchey, greeting:
In pursuance of a request to me made by C. N. White, a Receiver under the Act of the Confederate Congress, entitled "An Act for the Sequestration of the estates, property and effects of alien enemies, etc.," you are hereby commanded to appear before the Honorable the Judge of the District Court for the District of Cape Fear, in the District of North Carolina, at the term of said court to be held at Salisbury, on the 2d Monday of February next, to answer under oath the interrogatories hereunto appended.
Witness, the Hon. Asa Biggs, Judge of the said Court, at Wilmington, in the District of Cape Fear, in the District of North Carolina, this 14th day of January, A.D. 1862.
JOHN L. CANTWELL, Clerk. *Page 135 
INTERROGATORIES.
1. Have you now, or have you had in your possession, or under your control since the 21st of May 1861, and if yea, at what time, any land or lands, tenement or tenements, hereditament or hereditaments, chattel or chattels, right or rights, credit or credits, within the Confederate States of America, held, owned, preserved or enjoyed for or by an alien enemy; or in or to which any alien enemy had, and when, since that time, any right, title or interest, either directly or indirectly?
2. If you answer any part of the foregoing interrogatory in the affirmative, then set forth specifically and particularly a description of such property, right, title, credit or interest, and if you have disposed of it in whole or in part, or if the profit, or rent, or interest, accruing therefrom, then state when you made such disposition, and to whom, and where such property now is, and by whom held?
3. Were you, since the 21st day of May 1861, and if yea, at what time, indebted, either directly or indirectly, to any alien enemy, or alien enemies? If yea, state the amount of such indebtedness, if one, and of each indebtedness, if more than one, give the name or names of the creditor or creditors, and the place or places of residence, and state whether (174) or to what extent such debt or debts have been discharged, and also the time and manner of the discharge?
4. Do you know of any land or lands, tenement or tenements, hereditament or hereditaments, chattel or chattels, right or rights, credit or credits, within the Confederate States of America, or any right or interest held, owned, preserved, or enjoyed, by or for one or more alien enemies since the 21st day of May 1861, or in or to which one or more alien enemies had since that time any claim, title or interest, direct or indirect? If yea, set forth specifically and particularly what and where the property is, and the name and residence of the holder, debtor, trustee or agent.
5. State all that you may know which will aid in carrying into full effect the Sequestration Act of the 30th August 1861, and state the same as fully and particularly as if thereunto specially interrogated.
(Signed,) C. N. WHITE, Receiver.
NOTE.
The garnishee in the foregoing interrogatories is specially warned, that the Sequestration Act makes it the duty of each and every citizen to give the information asked in said interrogatories. Act of 30th August 1861, section 2.]
And if any agent, attorney, former partner, trustee or other person, holding or controlling any property or interest therein of, or for any alien enemy, shall fail speedily to inform the Receiver of the same, and to render him an account of such property or interest, he shall be guilty of a high misdemeanor, and upon conviction, shall be fined in a sum not exceeding five thousand dollars, and imprisoned not longer than six months, and be liable to pay besides to the Confederate States, double the value of the property or interest of the alien enemies, so held, or subject to his control. Section 3.
The Attorney General has also prescribed the following rule of practice for the courts, by virtue of the authority vested in him under the 16th section of the law: *Page 136 
RULE
Garnishees, to whom written or printed interrogatories are addressed, may make appearance by filling written answers, sworn to before a Justice of the Peace or other competent officer, unless specially ordered by the court to appear in person.
After being served with such process, to-wit, on the 23rd of May 1862, the said William paid the said distributive share to the said White, as Confederate Receiver.
His representative and sureties relied upon this transaction as a defence against the claim put up for said Martin A. Ritchey (175) through the plaintiff.
In the course of the suit an account was taken, and the commissioner allowed the payment to White as a full defence. Thereupon the plaintiff excepted. Upon appeal to the Judge such exception was sustained; and the defendants appeal to this court.
We are aware of the many difficulties which were encountered during the late war by the fiduciary holders of property, and we are disposed to consider such cases with all the liberality which the facts will justify.
Such persons, in order to free themselves from responsibility for the loss of such property, — must show that they acted in good faith and with the ordinary care which prudent men exercised in the management of their private affairs: Shipp v. Hettrick, 63 N.C. 329; Cobb v. Taylor,post 193.
This case was argued with much ability; and, after full consideration, we are of the opinion that the facts show that the testator of the defendant did not act with proper care in regard to the funds in question. He paid them to the Confederate Receiver five months before the estate of the intestate was settled, and before there was any decree of the Confederate Court requiring such payment. The process served upon him, only required him to appear before said Court, and show cause why such a decree should not be made. The Court to which he was summoned was to be held in an adjoining county, and was easily accessible by Railroad. It does not appear that he attended the Court, or employed counsel to assist him in protecting the funds from confiscation, although he would have been justified in using a part of the trust funds for that purpose. His conduct (176) was not that of a prudent trustee who was desirous of protecting the rights of his cestui que trust. He paid over the *Page 137 
funds without being compelled to do so by any legal process, and we must infer that he acted voluntarily and with the purpose of assisting in the enforcement of the confiscation laws.
If he had employed counsel, and made a proper defense in Court, and a decree had been made against him; and he had paid over the fund, to free himself from the penalties of an indictment or attachment; then he might not have been responsible for the loss of the fund.
Per curiam.
Judgment affirmed.